UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA LYNN J.,

        Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00084 EAW

## INTRODUCTION

Represented by counsel, plaintiff Jessica Lynn J. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 8; Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted and Plaintiff's motion (Dkt. 8) is denied.

**BACKGROUND**

Plaintiff filed her application for SSI on May 2, 2018. (Dkt. 6 at 14, 82).[1] In her application, Plaintiff alleged disability beginning January 18, 2018. (*Id.* at 14, 263). Plaintiff's application was initially denied on August 7, 2018. (*Id.* at 14, 82-93). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John J. Barry on November 22, 2019 (*id.* at 34-42), and March 13, 2020 (*id.* at 44-81). On August 3, 2020, the ALJ issued an unfavorable decision. (*Id.* at 11-22). Plaintiff requested Appeals Council review, and her request was denied on November 19, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

**LEGAL STANDARD**

**I.   District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## **DISCUSSION**

### I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 2, 2018, the application date. (Dkt. 6 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, status post-two surgeries, and obesity. (*Id*.

at 16). The ALJ further found that Plaintiff's medically determinable impairments of asthma, gastritis, and gastroenteritis were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 17). The ALJ particularly considered the criteria of Listing 1.04A in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a):

> except she can lift and carry less than 10 pounds frequently and 10 pounds occasionally; sit for 6 hours; stand for 4 hours and walk for 2 hours in an 8 hour workday, with a sit/stand option for 45 minutes at a time to change position for which no break would be required. She can never climb ropes, ladders or scaffolds and can occasionally climb ramps and stairs and occasionally balance, bend, stoop, crouch, crawl and kneel. She should avoid concentered exposure to respiratory irritants.

(*Id.*).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 21). The ALJ further relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of telephone information clerk, charge account clerk, and addresser. (*Id.* at 21-22). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 22).

II. **The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that: (1) the ALJ failed to fully evaluate the

testimony of medical expert Dr. Darius Ghazi; and (2) the ALJ failed to explain how he arrived at the highly specific sit/stand option contained in his RFC finding. (Dkt. 8-1 at 1). The Court is not persuaded by these arguments for the reasons discussed below.

### A. The ALJ Properly Assessed Dr. Ghazi's Testimony

The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on May 2, 2018, the new regulations, codified at 20 C.F.R. § 416.920c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 416.920c(a). With respect to "supportability,"

the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Although the applicable regulations state that an ALJ "will evaluate every medical opinion [he] receive[s,]" 20 C.F.R. § 416.927(c), "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean

- 7 -

the rationale of an ALJ's decision[,]" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). "[F]ailure to discuss and/or weigh a medical opinion is not per se remandable error but may be found harmless error." *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-CV-01432, 2022 WL 2180159, at *6 (W.D.N.Y. June 16, 2022) (collecting cases).

Here, Plaintiff contends that the ALJ's opinion did not fully consider Dr. Ghazi's medical expert opinion in that the opinion did not acknowledge Dr. Ghazi's testimony that Plaintiff should be "reevaluated to determine the extent of Plaintiff's functional limitations," nor his testimony that Plaintiff "would have periods where she would be at a less than sedentary capacity due to pain exacerbating her symptoms." (Dkt. 8-1 at 8). Defendant argues in opposition that these statements were not "medical opinions" as defined in the Commissioner's regulations and that they provided no meaningful commentary on Plaintiff's ability to perform basic work activities. (Dkt. 9-1 at 8-10).

The applicable regulations define a "medical opinion" as a "statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the abilit[y]" to perform basic work activities listed therein. 20 C.F.R. § 416.913(a)(2). The Court finds persuasive Defendant's argument that the statements by Dr. Ghazi which Plaintiff points to do not meet this definition. First, as to Dr. Ghazi's statement that Plaintiff would "need to be evaluated again" (Dkt. 6 at 72), contrary to Plaintiff's argument, Dr. Ghazi was not referring to an assessment of Plaintiff's functional limitations. Instead, read in context, it is clear that Dr. Ghazi was indicating that the record before him did not definitively answer the question of why Plaintiff had required a second surgery. (*See id.* at

72-73 ("You know, she had surgery twice. And there's a reason for that. She might have failed the first surgery, or had a recurrent disc rupture. . . . Need to be evaluated again.")). However, the ALJ then clarified that it was Plaintiff's subsequent pregnancy that caused her to have recurring difficulties after her surgery. (*Id.* at 73 ("ALJ: But doctor, isn't that a consequence of the two pregnancies which followed the two surgeries because after the surgeries themselves, she had a complete relief of symptoms until she became pregnant, both times, isn't that correct? [Dr. Ghazi]: Correct, yes.")). In other words, Dr. Ghazi was commenting on the underlying causes of Plaintiff's impairments—not their associated limitations—and he in any event modified his view when reminded of pertinent information by the ALJ.

As to Dr. Ghazi's statements regarding Plaintiff potentially having periods where her symptoms were exacerbated, he did not provide any useful guidance to the ALJ in this regard. While he indicated that it was "quite probable" that there would be days in an average month that Plaintiff's "symptoms would exacerbate and she would be capable of less than a sedentary level of work," he could not say how many such days there might be, indicating that any such opinion would be "speculative." (*Id.* at 73-74). He further did not define what was meant by "less than a sedentary level of work." These are not meaningful statements regarding the impact that Plaintiff's impairments would have on her ability to perform work-related functions. Moreover, even if these statements can be considered "medical opinions," an ALJ has the discretion "to discount a medical opinion due . . . to its vagueness or ambiguity." *Alexander v. Comm'r of Soc. Sec.*, No. 19-CV-762-FPG, 2020 WL 5642184, at *5 (W.D.N.Y. Sept. 22, 2020). The ALJ did not commit reversible error

by failing to credit an opinion that Dr. Ghazi himself described as speculative.[2]

### B. The ALJ's Determination that Plaintiff Requires a Sit/Stand Option is Supported by Substantial Evidence

In determining Plaintiff's RFC, the ALJ assessed a sit/stand option "for 45 minutes at a time to change position for which no break would be required." (Dkt. 6 at 17). Plaintiff argues that the ALJ's opinion does not address how the ALJ arrived at the specific 45-minute sit/stand option. (Dkt. 8-1 at 10-11). Therefore, Plaintiff argues, the determination is not supported by a medical opinion or by substantial evidence. (*Id.*). In response, the Commissioner argues that the ALJ's reasoning can be gleaned from the opinion and substantial evidence supports the determination. (Dkt. 9-1 at 12).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).

> In other words: An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a

---

[2] The Court further notes that the ALJ's RFC finding limited Plaintiff to less than a full range of sedentary work. It is thus not even clear that there is any inconsistency between the ALJ's determination and Dr. Ghazi's vague statements that Plaintiff would probably be limited, on an unspecified number of days, to less than a sedentary level of work.

medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

However, an ALJ does not commit reversible error where he gives a claimant the benefit of the doubt and assesses limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints. *See, e.g., Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) ("[This] is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony. This does not constitute reversible error."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted, and assessed a more generous limitation of 5% off-task time. The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." (internal citation omitted)).

In this case, neither Dr. Ghazi nor consultative examiner Dr. Samuel Balderman opined that Plaintiff required a sit/stand option. Dr. Balderman did not assess any limitations in sitting or standing (Dkt. 6 at 487-88), while Dr. Ghazi opined that Plaintiff was capable of sitting for six hours in an eight-hour workday without restriction, and was capable of standing for four hours with only normal breaks (*id.* at 67). However, Plaintiff

testified at the hearing she can sit for "15, 20 minutes" before experiencing pain. (*Id.* at 54). She would then need to stand and stretch before sitting again. (*Id.*). Plaintiff further testified that she could stand for 10 to 15 minutes, and by 25 minutes, her feet would be numb. (*Id.*). The ALJ explained that he weighed Plaintiff's subjective complaints against the medical assessments that noted her normal strength, reports of alleviated pain, and normal gait. (*See id.* at 20). The Court cannot conclude that the ALJ's resolution of these conflicting aspects of the record was outside his discretion. *See Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 276 (W.D.N.Y. 2021) ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners.").

This case is distinguishable from *Rice v. Colvin*, No. 1:15-CV-00959 (MAT), 2016 WL 7366977 (W.D.N.Y. Dec. 20, 2016), on which Plaintiff relies (*see* Dkt. 8-1 at 10), and other cases in which an ALJ has, without explanation, interpreted a vague medical opinion as supporting a highly specific sit/stand option. *See, e.g., Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *4 (W.D.N.Y. Apr. 28, 2020) (concluding that RFC finding was unsupported by substantial evidence where the ALJ included a highly specific sit/stand limitation based on medical opinion that Plaintiff had "moderate limitations" for walking and standing). Here, the ALJ was not purporting to adopt a medical examiner's opinion based on his own lay interpretation. Instead, he permissibly partially credited Plaintiff's subjective complaints and accordingly included in the RFC finding a limitation that was not identified by the medical opinions of record. This does not entitle

Plaintiff to a reversal of the Commissioner's determination. *See Mary Diane K.*, 541 F. Supp. 3d at 277 ("Here, the ALJ explained that she was affording Plaintiff the benefit of the doubt and crediting her statement that her symptoms increased with use of her hands, as well as taking into account her testimony regarding her cervical spine impairments. . . . This is simply not a basis for reversal."); *Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion. But this does not constitute reversible error.").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   December 8, 2022
         Rochester, New York